HOOD, Judge.
This is an action for damages primarily for personal injuries sustained by plaintiff, Ronald F. Saxon, when an automobile in which he was riding as a passenger ran off the road and collided with a utility pole. The suit was instituted by Frank D. Saxon, Ronald F. Saxon and Indiana Lum-bermens Mutual Insurance Company, against Ford Motor Company, Morock Ford, Inc., and The Insurance Company of North America. Judgment was rendered by the trial court in favor of defendants. Plaintiffs, Frank D. Saxon and Ronald F. Saxon, have appealed.
Ronald F. Saxon was a minor when the accident occurred, and this suit was instituted originally by his father, Frank D. Saxon, individually and as administrator of the estate of his minor son. Ronald reached the age of majority while the suit was pending, however, and he then was substituted as a party plaintiff.
The principal issue presented is factual, and that is whether the brakes on the automobile in which the injured plaintiff was riding were defective, and if so, whether that defect was a proximate cause of the accident.
The accident which resulted in Ronald’s injuries occurred about 8:00 P.M. on April 2, 1966, on a blacktopped road in Allen Parish. Shortly before it occurred, young Saxon drove a Mustang automobile owned by his father to a drive-in restaurant, located on U. S. Highway 165, a short distance south of Oakdale, Louisiana. While there he met two of his friends, Steven A. Bourgeois and Edward Paul Guitreau, Jr., and the three of them decided to take a ride in the Saxon car, with Bourgeois driving. They got into the automobile, with Bourgeois in the driver’s seat, Ronald Saxon *280 sitting on the front seat to the right of the driver, and Guitreau sitting in the rear seat. Upon leaving the drive-in they proceeded to travel west, on a blacktopped road, a distance of four-tenths of a mile to a point where the road makes a relatively sharp curve to the south. Bourgeois, the driver, attempted to turn to his left at that point, but he failed to negotiate the curve, and the car skidded off the right side of the highway and struck a utility pole. The automobile was damaged considerably and young Saxon was injured as a result of that accident.
The Mustang automobile involved in this suit was relatively new when the accident occurred. It had been purchased on March 26, 1966, by Frank D. Saxon for the use of his son, Ronald. The car had been manufactured by Ford Motor Company, and it was sold to Saxon by Morock Ford, of Alexandria, an authorized retail dealer of Ford Motor Company for that type of car. Defendant, The Insurance Company of North America, was the liability insurer of Ford Motor Company when the car was sold and when the accident occurred. The vehicle was inspected before it was delivered to Saxon, and it had been driven less than 800 miles by the time the accident occurred. The brakes had worked perfectly during the entire time Saxon had owned the vehicle, and no one had discovered any defects in the braking system before the accident occurred.
Plaintiffs contend that there was a defect in the braking system of the Mustang automobile, and that this defect was the sole and proximate cause of the accident. They allege that defendants Ford Motor Company and Morock Ford, Inc., were negligent in manufacturing, assembling and selling such a vehicle with defective brakes, or in failing to inspect, discover and repair the defects before the car was delivered to the purchaser. Defendants deny that there was any defect in the braking system of the car, and contend that the sole proximate cause of the accident was the negligence of the driver in driving at an excessive rate of speed and in failing to maintain proper control of the vehicle as it approached a curve in the road.
Bourgeois testified that as he approached the curve in the blacktopped road he attempted to apply the brakes of the car, but that he was unable to find the brake pedal. He stated that he then tried to make a left turn without brakes, that the car skidded off the right side of the highway, and that the right front part of the vehicle struct a utility pole. Ronald Saxon and Guitreau, the other two occupants of the car, each testified that just before the accident occurred Bourgeois commented that he couldn’t find the brake pedal, and that they heard his foot moving or “stumping” on the floor as though he were attempting to find it.
The braking mechanism on that model car does not contain a lever or rod which runs through the floorboard. Instead, the upper part of the brake pedal lever is hinged just underneath the dashboard, and the pedal itself, attached to the lower end of that lever, hangs down so that it is located just a few inches above the floorboard. The mechanism normally is equipped with a “brake stop,” so that when the driver removes his foot, the pedal will return only to its usual position near the floorboard, and will not continue to swing further backward and up until it reaches a point under the dash. The brakes on the Mustang involved here were designed to have an “internal brake stop,” which consisted in part of a plastic washer on the push rod running from the brake lever to the piston in the master cylinder. When the driver removes his foot from the brake pedal, this plastic washer normally engages the rear shoulder of a slot in the piston preventing the brake pedal from going back any further than its usual hanging position. Plaintiffs contend here that this plastic washer either was not inserted in the braking mechanism of this car by the manufacturer or that the washer was defective.
Shortly after this accident occurred the brake pedal was found to be up under the *281 dashboard of the Mustang automobile. If the pedal had been in that position as the car approached the curve in the road, then it would be understandable that the driver could not find the pedal when he attempted to reduce the speed of the car. The wrecked automobile was repaired by Morock Ford on September 10, 1966, about five months after the accident occurred, and the repairs made at that time included the replacing of the “entire brake pedal.” The repair order of Morock Ford contains the following notation: “Brake stop omitted from pedal at factory.”
All of the above mentioned facts tend to support plaintiffs’ theory that the braking mechanism of the car was defective, and that this defect was a proximate cause of the accident. Defendants point out other facts, however, which tend to show that the brakes were in good working order.
The evidence shows, for instance, that the Mustang automobile left skid marks 90 feet long, beginning on the blacktopped highway and continuing up to the point where the car came to rest against the utility pole. The first 75 feet of the skid marks were on the blacktopped road and they were relatively straight, curving only slightly to the left. After skidding this distance of 75 feet, the car then reached the gravelled shoulder of the road and it then began to skid sideways for about 15 feet until it struck the pole.
Plaintiffs refer us to the testimony of the investigating officer to the effect that the skid marks on the hard surfaced slab were slightly wider than the width of the tires, with a slightly darker area on the right side. They argue that the driver of the car turned it slightly to the left as he approached the curve, and that the skid marks were left because of that slight turn rather than because of the application of brakes. We have examined the testimony of the investigating officer, the opinion expressed by Dr. William H. Tonn, Jr., a qualified expert in reconstructing automobile accidents, and all of the other evidence in the record relating to the accident, and we conclude that the skid marks left by the Mustang were caused by the application of brakes on that vehicle.
The evidence also shows that just a few minutes before the accident occurred the state trooper who investigated it received a report from an unknown person that a Mustang automobile was drag racing with two motorcyclists on this particular road. He then proceeded to the area in response to that report, and while doing so he received another report from a different source that an accident had occurred. He arrived at the scene of the accident within a very few minutes after it occurred, estimated by him to be within two or three minutes, and when he got there he found two motorcyclists also there at the wrecked car.
The evidence is undisputed that the brakes on the Mustang had functioned properly at all times before the accident occurred, and that the brake pedal had never folded up under the dash. Bourgeois and young Saxon concede that the brakes of the car were applied effectively and normally within one or two minutes before the accident occurred, when the car was maneuvered out of the parking area of the drive-in restaurant just before it was driven westward on the blacktopped road. Expert mechanics called by defendants testified that the brake stop mechanism could have been broken as a result of the impact, but that it is highly improbable that it could have broken between the time the car left the drive-in restaurant and the time of the accident.
The trial judge found that the skid marks left by the Mustang automobile actually resulted from the application of the brakes. He concluded, therefore, that despite any defect which may have existed in the braking mechanism of the car, the brakes functioned efficiently just before this accident occurred, and that plaintiffs thus failed to establish either that there was a defect in the braking system or that any such defect was a proximate cause of the accident.
*282 We cannot say that the trial judge erred in reaching that conclusion, and we thus affirm the judgment rendered by the district court.
Having reached that factual conclusion, it is unnecessary for us to consider plaintiffs’ argument that the doctrine of res ipsa loquitur should be applied.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
On application for Rehearing.
En Banc. Rehearing denied.
MILLER, J., recused.